IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT UNDERWOOD     *
         Plaintiff,
     v.     *    CIVIL ACTION NO. WDQ-08-3354

ANNE ARUNDEL COUNTY DETENTION     *
  CENTER
         Defendant.     *
                                          ***

## **MEMORANDUM**

I      PROCEDURAL HISTORY

This 42 U.S.C. § 1983 civil rights Complaint for damages was received for filing on December 12, 2008. Plaintiff accuses Anne Arundel County Detention Center ("AACDC") healthcare staff of failing to provide him immediate foot surgery for an injury he sustained on July 18, 2007.[1] Paper No. 1. He claims that when he was transported to an orthopedic surgeon three to four weeks later, the surgeon advised him that it was too late to surgically repair the foot because the bone had already started to heal.[2] *Id*. Plaintiff alleges that he has a bone "protruding out the left side of his foot and he is in constant pain." *Id*. He seeks unspecified money damages and also requests surgery to correct the problem. *Id*.

II      PENDING MOTIONS

Currently pending is Defendant's unopposed Motion to Dismiss or, the Alternative, for Summary Judgment.[3] Paper No. 10. The undersigned has examined the medical records and

---

[1] According to the Complaint, Plaintiff was tasered, arrested, and transported to a hospital to have the taser barb removed. Paper No. 1. He alleges that he "ran out" of the hospital, jumped off a 30 foot wall, and shattered the bones in his foot.

[2] At all times during the pendency of this action, Plaintiff has been housed at a Maryland Division of Correction facility.

[3] On April 29, 2009, Plaintiff was provided court notice of the dispositive filing pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Paper No. 11. No opposition has been filed.

declarations submitted by the parties and finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2008). For reasons to follow, Defendant's pleading shall be granted.

III.     STANDARD OF REVIEW

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id*. at 1966 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *IFAST, Ltd. v. Alliance Solution Telecommunications Industry*, 2007 WL 3224582 *3 (D. Md. 2007).

When considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

Moreover, summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

IV.     DISCUSSION

    1.      Facts

According to Defendant, on July 18, 2007, Plaintiff attempted to escape from Harbor Hospital Center ("HHC") where he was undergoing treatment after his arrest. In his attempt to escape Plaintiff fell and sustained a vertical fracture of his left calcaneus (heel) bone. Paper No. 10, Ex. A. The treating physician at HCC wrapped the foot with an ACE bandage to immobilize it and also placed the foot in a posterior splint and air cast. *Id*. Plaintiff was given a post-operative shoe to wear and crutches to use for ambulation. Motrin was recommended for pain relief. *Id*., Ex. A; Ex. B at pgs. 1-5 & 7.

Plaintiff was discharged to the Jennifer Road Detention Center, a facility of the AACDC system, and housed in the medical unit in order to have access to assistive devices such as elevators and handicapped-accessible showers and toilets. *Id*. He was given Motrin for pain and his ACE wrap, splint, air cast, and shoe were continued. *Id*., Ex. A; Ex. B at pgs. 6, 8-9, 11-16.

On July 21, 2007, AACDC Medical Director Dr. Luis Rivera reviewed Plaintiff's x-rays from HHC. An orthopedic referral was noted. *Id*., Ex. A; Ex. B at pg. 17. On July 30, 2007, Plaintiff was able to ambulate without difficulty using crutches. *Id*. Rivera affirms that Plaintiff did not need to use a wheelchair, but still had to use an elevator instead of steps. *Id*., Ex. A; Ex. B at pg. 18.

On August 1, 2007, AACDC officers responded to a report that Plaintiff had fallen in the bathroom area and hurt his leg. Paper No. 10, Ex. A. He was evaluated by medical staff and no signs of injury were noted. *Id*. Plaintiff was referred to Dr. Rivera, who reached the same conclusion as medical staff. *Id*.; Ex. A; Ex. B at pgs. 19-20. On August 6, 2007, Rivera submitted a consultation request for Plaintiff to be evaluated by an orthopedic surgeon. On August 13, 2007, less than one month after the injury, Plaintiff was seen by Dr. Edward Holt, who put a cast on Plaintiff's foot and recommended that an x-ray be taken in three weeks. *Id*., Ex. A; Ex. B at pgs. 21-24. Rivera opines that immobilization is the appropriate treatment for this type of non-displaced fracture.[4]  *Id*., Ex. A.

On September 17, 2007, Rivera referred Plaintiff back to Holt for follow-up. *Id*. Plaintiff was evaluated on October 9, 2007, at which time Holt advised medical staff that Plaintiff was able to walk with full weight-bearing on his foot as tolerated. *Id*., Ex. A; Ex. B at pg. 26. Holt scheduled Plaintiff for a November 20, 2007 follow-up appointment. *Id*.

On September 21, 2007, Plaintiff filed a sick-call form complaining that his foot was "all messed up." *Id*., Ex. A. He was referred to Rivera, who found that Plaintiff was receiving the appropriate treatment for his foot fracture and no additional treatment was necessary. *Id*., Ex. A; Ex. B at pg. 25.

On November 20, 2007, Holt re-evaluated Plaintiff. *Id*. He noted that Plaintiff's calcaneus was healed with "persistent residual deformity or malunion that would not be affected by Plaintiff's activities." *Id*., Ex. A; Ex. B at pg. 27. Holt showed Plaintiff some exercises to perform and advised him that he could wear a regular shoe and could ambulate with weight-bearing as tolerated.

---

[4]  According to Defendant, non-displaced fractures are cracks in the bone seen on an x-ray, but with the bones remaining in their proper position and alignment.

He recommended follow-up in three months if Plaintiff's pain had not improved. Paper No. 10, Ex. A; Ex. B at pg. 27.

On November 21, 2009, Plaintiff was transferred from pre-trial detention to the Maryland Division of Correction. He was evaluated by Physician's Assistant ("P.A.") Ronald Clark on November 30, 2007, and told Clark that he had fractured his left heel, had been in a cast for one month, and was still having problems walking. *Id*., Ex. A. P.A. Clark observed that Plaintiff's left ankle showed no visible deformity, discoloration, or edema and that Plaintiff exhibited good weight bearing. Clark ordered a follow-up x-ray of Plaintiff's ankle. *Id*., Ex. A; Ex. B at pgs. 28-31.

An x-ray was taken of Plaintiff's left ankle on December 4, 2007. *Id*., Ex. A; Ex. B at 32. The x-ray showed moderate osteoporosis and that both malleoli (projections on each bone of the lower leg that protrude in the ankle area) were intact. *Id*. On December 7, 2007, Plaintiff was transferred to the Maryland Correctional Training Center, where he is still housed.[5] *Id*.

   2.   Legal Analysis

Defendant AACDC argues that as named by Plaintiff, it is not a legal entity subject to suit under § 1983. The undersigned agrees. Title 42 U.S.C. § 1983 authorizes the imposition of liability against "persons" who, acting under color of state law, subject a citizen to a deprivation of constitutional rights. AACDC is a building and not a "person" amenable to suit under § 1983. *See e.g., Powell v. Cook County Jail,* 814 F.Supp. 757 (N.D. Ill. 1993) (jail not subject to suit); *Marsden v. Fed. Bureau of Prisons*, 856 F.Supp. 832, 836 (S.D. N.Y. 1994) ("jail is not an entity that is amenable to suit").

Further, the Court has examined the medical record and finds no constitutional violation on the part of AACDC staff. A detainee's medical claim may sound under the Fourteenth Amendment's

---

[5] As an aside, Defendant notes that on May 7, 2008, Plaintiff informed a nurse that he was running to his cell. Paper No. 10, Ex. A.

Due Process Clause. There is no practical difference, however, between the due process standard and the Eighth Amendment protection standards, which measure substantial risk and deliberate indifference. *See Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir. 1978). To establish a claim of this nature Plaintiff must satisfy two requirements. First, he must satisfy the "objective" component by illustrating a serious medical need.[6] *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If Plaintiff proves this first element, he must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendant. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Id*. at 837.

It remains undisputed that Plaintiff received immediate evaluation and care for his non-displaced left heel fracture. A wrap, splint, cast, shoe, pain medication, and crutches were provided and follow-up x-rays were taken. Plaintiff was seen by AACDC nurses and doctors and he was repeatedly seen by Dr. Holt, an orthopedic specialist, who noted that the heel fracture had healed, with residual deformity and malunion that would not be effected by Plaintiff's activities. Further,

---

[6] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006), *citing Hill v. Dekalb Reg. Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994); *see also Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987); *Creech v. Nguyen*, 153 F.3d 719, 1998 WL 486354, at *5 (4th Cir. 1998).

all care recommended by the specialist was provided by AACDC staff.  No Fourteenth Amendment deprivation has been demonstrated.

V.  CONCLUSION

For the aforementioned reasons Defendant's dispositive motion, construed as a motion to dismiss or for summary judgment, shall be granted and judgment shall be entered in favor of Defendant and against Plaintiff.   A separate Order follows.

Date: July 13, 2009                           /s/
                                    William D. Quarles, Jr.
                                    United States District Judge